**AKZO COATINGS, INC., et al., Plaintiffs,**

**v.**

**AIGNER CORP., et al., Defendants.**

**No. 3:91–CV–570RM.**

United States District Court,
N.D. Indiana,
South Bend Division.

July 19, 1996.

Timothy W. Woods, Jones Obenchain Ford Pankow and Lewis, South Bend, IN, Gary R. Letcher, Timothy L. Harker, Colleen M. Morgan, David Zachary Kaufman, The Harker Firm, Washington, DC, for Akzo Coatings, Inc., O'Brien Corp.

Pierre C. Talbert, Jr., Timothy F. Kocian, Katz Randall and Weinberg, Chicago, IL, Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, for Aigner Corp., American Can Co., Duplicolor Products Co., Illinois Bronze Paint Co., Motorola, Inc., Prefinish Metals, Inc., S & C Elec. Co.

Pierre C. Talbert, Jr., Katz Randall and Weinberg, Chicago, IL, for Dexter Corp.

Pierre C. Talbert, Jr., Timothy F. Kocian, Katz Randall and Weinberg, Chicago, IL, Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, Kenneth Anspach, John D. Dalton, Margaret Rosenberg Milsky, Anspach and Dalton, Chicago, IL, James E. McKinnon, Reynolds Metals Co., Richmond, VA, for Graham Paint & Varnish Co., Inc.

James H. Milstone, Thorne Grodnik Ransel Duncan Bryon and Hostetler, Elkhart, IN, Philip B. McKiernan, Hackman McClarnon Hulett and Cracraft, Indianapolis, IN, for IVC Indus. Coatings, Inc.

Pierre C. Talbert, Jr., Timothy F. Kocian, Katz Randall and Weinberg, Chicago, IL, Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, James E. McKinnon, Reynolds Metals Co., Richmond, VA, for Reynolds Metals Co.

Richard W. Paulen, Barnes and Thornburg, Elkhart, IN, Pierre C. Talbert, Jr., Timothy F. Kocian, Katz Randall and Weinberg, Chicago, IL, Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, for Rollcoater.

Pierre C. Talbert, Jr., Timothy F. Kocian, Katz Randall and Weinberg, Chicago, IL, Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, Mark J. Steger, McBride Baker and Coles, Chicago, IL, for Sherwin Williams Co.

Pierre C. Talbert, Jr., Timothy F. Kocian, Katz Randall and Weinberg, Chicago, IL, Christopher W. Brownell, Deanna S. Brocker, Foley and Lardner, Chicago, IL, Ronda P. Bayer, Valspar Corp., Minneapolis, MN, for Valspar, Inc.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the motion for partial summary judgment filed by plaintiffs Akzo Coatings and O'Brien Corporation, and the motion for partial summary judgment filed by the RD/RA Settling Defendants.[1] Both motions seek a finding that certain parties are liable for contribution pursuant to § 113(f) of Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f). The court presumes a familiarity with the court's prior orders in this cause, including those reported at *Akzo Coatings, Inc. v. Aigner Corp.*, 881 F.Supp. 1202 (N.D.Ind.1994) (the "October 1994 Order") and *Akzo Coatings Inc. v. Aigner Corp.*, 909 F.Supp. 1154 (N.D.Ind.1995) (the "October 1995 Order"), and the Seventh Circuit's opinion reported at *Akzo Coatings, Inc. v. Aigner Corp.* 30 F.3d 761 (7th Cir.1994). For the following reasons, the court grants both motions for partial summary judgment.

### I. SUMMARY JUDGMENT ANALYSIS

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.

*Conery v. Bath Associates*, 803 F.Supp. 1388, 1392–1393 (N.D.Ind.1992) (citations omitted). "The summary judgment standard is not heightened in a CERCLA cause of action." *Dana Corporation v. American Standard, Inc.*, 866 F.Supp. 1481, 1493 (N.D.Ind.1994) (citations omitted) (rejecting contention that an "especially stringent" summary judgment standard applies in CERCLA).

Both motions seek a finding that the opposing parties are liable for contribution pursuant to § 113(f) of CERCLA. As explained in the October 1995 Order in this cause:

"Under the CERCLA statutory scheme, § 107 ... governs liability, while § 113(f) creates a mechanism for apportioning that liability among responsible parties." *Town of Munster, Indiana v. Sherwin–Williams Co. Inc.*, 27 F.3d 1268, 1270 (7th Cir.1994).

---

1. The RD/RA Settling Defendants are Aigner Corp., American National Can Co., The Dexter Corp., Duplicolor Products Co., Graham Paint & Varnish Co., Inc., Illinois Bronze Paint Co., Motorola, Inc., Prefinish Metals, Inc., Reynolds Metals Co., Roll Coater, Inc., S & C Electric Co., Sherwin Williams Co., Valspar, Inc., and Whittaker Corp.

Thus, although § 107 applies in this suit with respect to determining the liability of the parties, § 113(f) governs the actual apportionment of costs. Accordingly, a determination that a party is "liable" pursuant to § 107 does not mean that the liable party will be required to pay damages; rather, damages are assessed through § 113(f) on an equitable basis. Thus, a "liable" party in a § 113(f) contribution action may be required to pay complete response costs, or may not be required to pay any response costs, or may be required to pay some intermediate amount, all depending on the court's equitable assessments under § 113(f).

Liability under § 107(a) of CERCLA is strict, *Harley–Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1401 [131 L.Ed.2d 289] (1995); a plaintiff need prove only four elements to establish liability:

(1) the site in question is a "facility" as defined in § 101(9);

(2) the defendant is a responsible person under § 107(a);

(3) a release or a threatened release of a hazardous substance has occurred; and

(4) the release or the threatened release has caused the plaintiff to incur response costs.

*Town of Munster, Indiana v, Sherwin–Williams Co., Inc.*, 27 F.3d at 1273; *see also Kerr–McGee Chemical v. Lefton Iron & Metal,* 14 F.3d 321, 325 (7th Cir.1994); *Environmental Transp. Systems, Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir. 1992); *Dana Corporation v. American Standard, Inc.*, 866 F.Supp. 1481, 1493 (N.D.Ind.1994). "If a plaintiff establishes each of the four elements and the defendant is unable to establish one of the defenses listed in § 9607(b), the plaintiff is entitled to summary judgment on the liability issue." *Environmental Transportation Systems, Inc. v. ENSCO, Inc.*, 969 F.2d at 507.

Thus, in suits between PRPs ["potentially responsible parties"], § 107 provides the framework for a plaintiff to establish a defendant's liability under CERCLA, and § 113(f) establishes the framework for lia-ble parties to litigate the issue of damages. *See, e.g., Town of Munster, Indiana v. Sherwin–Williams Co., Inc.*, 27 F.3d at 1270.

*Akzo Coatings, Inc. v. Aigner Corp.*, 909 F.Supp. at 1160–1161.

### A. THE SETTLING DEFENDANT'S MOTION

The Settling Defendants seek a finding that plaintiffs Akzo and O'Brien are liable for contribution under § 113(f) of CERCLA. In response, Akzo and O'Brien admit that they are "responsible part[ies]" under § 107(a) of CERCLA and are thus are "liable for a contribution share" with respect to at least part of the Fisher–Calo Site. Akzo and O'Brien's primary contention is that although they are in fact liable for contribution under § 113(f), they are only so liable with respect to one of five distinct "facilities" within the Site. With respect to the other four purported facilities, Akzo and O'Brien contend that they are not liable and that summary judgment should be denied. The Settling Defendants respond that Akzo and O'Brien is attempting impermissibly to divide the one facility at the Site into five facilities so that the Settling Defendants will be required to prove all four elements of liability with respect to each separate facility.

Akzo and O'Brien argue that the Site consists of five distinct facilities, and that the Settling Defendants must separately prove that Akzo and O'Brien are liable with respect to each. Akzo and O'Brien contend that the court's October 1994 Order foreclosed the issue of how many facilities exist at the Site: "This court has held that the Fisher–Calo site consists of five separate facilities, each containing one or more areas of soil and/or groundwater contamination." This argument misapprehends what the court stated in the October 1994 order, which addressed Akzo and O'Brien's divisibility defense (a defense the court subsequently disallowed in the October 1995 Order), and stated that the Site could be divided into five distinct areas of contamination:

Akzo and O'Brien contend that the harms at the Site are divisible based upon their location, the time that the harms

were caused, and the chemical constituents of the contamination. The court agrees that the harm is divisible based upon geographic location. Both sides have presented numerous maps that have aided the court in determining that the Site as a whole is divisible based upon location of the hazardous waste. Within the Site as a whole, a number of non-contiguous areas of contamination appear, including seven distinct areas of soil contamination, three distinct areas of groundwater contamination, and two distinct areas of suspected drams.

*Akzo Coatings, Inc. v. Aigner Corp.*, 881 F.Supp. at 1210. The court went on to describe five separate geographic areas of harm. While the court did term each area a "facility," it did so in a descriptive manner (i.e., "The Two–Line facility is a cluster of buildings . . .", etc.), and not in the sense imported to that term by § 101(9). At no point in the Order did the court hold that the Site consisted of five separate facilities in the way that Akzo and O'Brien now contend; the court did not hold that the Site consisted of separate CERCLA "facilities" as defined by § 101(9). The court merely stated that the Site is divisible based upon geographic location, and then described the five different locations that could be identified.

The October 1994 Order does not support Akzo and O'Brien's present contention that each area of harm at the Site is a separate CERCLA facility requiring the Settling Defendant's to prove their liability with respect to each. Akzo and O'Brien also rely on a solitary statement made by the Seventh Circuit in this cause to support their contention that the Site consists of separate CERCLA facilities: "the Court of Appeals observed . . . that liability must be established with respect to each separate facility." This is a misstatement of the Seventh Circuit's observation. The court stated that:

If, for example, all of Akzo's solvents were deposited at Two–Line Road while Aigner's were deposited at a different facility, Akzo's claim looks less like one for contribution and more like one for cost recovery. But the basis for holding Aigner liable in that in that scenario escapes us. Only the

hypothesis that the whole Fisher–Calo site is the proper unit of analysis, or that both Akzo and Aigner sent solvents to Two–Line Road, would give Akzo a legitimate claim against Aigner.

*Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d at 765. Neither the Seventh Circuit nor this court has held that the whole Fisher–Calo Site is not the "proper unit of analysis" with respect to the relevant "facility" at issue in this cause. The court's holding in the October 1994 Order was simply that the Site was divisible by geographic location, and was not that the Site consisted of separate CERCLA facilities. Moreover, the court disallowed the use of the divisibility defense in its October 1995 Order. Thus, the issue of how many facilities exist with respect to this lawsuit has not been addressed before now.

■ Section 101(9) of CERCLA defines "facility" to include any "site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or [has] otherwise come to be located." 42 U.S.C. § 9601(9). This definition is intended to be expansive. *Northwestern Mut. v. Atlantic Research*, 847 F.Supp. 389, 395 (E.D.Va. 1994); *see also Brookfield–North Riverside Water Commission v. Martin Oil Marketing*, No. 90 C 5884, 1992 WL 63274, 1992 U.S. Dist LEXIS 2920 (N.D.Ill. March 12, 1992); *United States v. Ward*, 618 F.Supp. 884, 895 (E.D.N.C.1985). "Simply put, the term 'facility' includes every place where hazardous substances come to be located." *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 185 (W.D.Mo.1985).

Akzo and O'Brien argue that because the Site can be divided into five distinct geographic areas, each area is a distinct facility, but "what matters for purposes of defining the scope of facility is where the hazardous substances were 'deposited, stored, disposed of, . . . or *[have] otherwise come to be located.*'" *Northwestern Mut. v. Atlantic Research*, 847 F.Supp. 389, 395–396 (E.D.Va. 1994) (emphasis in original) (footnote omitted). There is no dispute that hazardous wastes have "otherwise come to be located" in several locations at the Site. Moreover, the consent decree entered into by the Settling Defendants with the United States Environ-

mental Protection Agency ("USEPA"), upon which the Settling Defendants' counterclaims are based, clearly defines the relevant facility to encompass the entire Fisher–Calo Site:

"Facility" refers to the location where treatment, storage, disposal, or other placement of hazardous substances was conducted by the Fisher–Calo Chemical Company, and those areas where such substances have come to be located, which facility is located in the Kingsbury Industrial development Park, LaPorte County, State of Indiana, and includes the "Fisher–Calo Chemical Corporation Site" as that term is used in the Record of Decision and Scope of Work (as defined herein).

Consent Decree, at 7. *See also Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d at 765. Further, the USEPA placed the Fisher–Calo Site on the National Priorities List as a whole, and not as separate and distinct facilities. The USEPA has consistently treated the Fisher–Calo Site as one facility, and Akzo and O'Brien have done nothing (save reargue its divisibility defense) to persuade the court that the Site actually consists of separate CERCLA facilities. To suggest otherwise could have disastrous consequences, for ultimately every separate instance of contamination, down to each separate barrel of hazardous waste, could feasibly be construed to constitute a separate CERCLA facility. To require a plaintiff to establish the liability of a defendant with respect to each separate facility at this level would defeat the purpose of imposing strict liability under CERCLA, because it would require a plaintiff to trace each harm to a defendant before liability for contribution may be imposed.

█ Thus, the court agrees with the Settling Defendants that the Site constitutes one CERCLA facility, and so rejects Akzo and O'Brien's contention that the Site should be separated into five separate facilities so that the Settling Defendants must establish its liability for contribution with respect to each. That the harm may be divisible based upon geographic location goes not to the issue of liability under § 107, but rather to the allocation of contribution under § 113(f). "Causation, while irrelevant when determining liability, can affect the ultimate determi-

nation of damages under § 113(f), which provides that '[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.'" *Akzo Coatings, Inc. v. Aigner Corp.*, 909 F.Supp. at 1161. Although the principals of divisibility may be of influence when allocating contribution under § 113(f), they are not relevant to a determination of liability under § 107.

█ The Site consists of only one facility, and given that Akzo and O'Brien concede that they are liable (albeit only with respect to one geographic area of harm), the Settling Defendants' motion for partial summary judgment should be granted. Akzo and O'Brien are liable for contribution to the Settling Defendants under § 113(f). This does not necessarily mean that Akzo and O'Brien will actually have to pay the Settling Defendants damages, for "a determination that a party is 'liable' pursuant to § 107 does not mean that the liable party will be required to pay damages; rather, damages are assessed through § 113(f) on an equitable basis. Thus, a 'liable' party in a § 113(f) contribution action may be required to pay complete response costs, or may not be required to pay any response costs, or may be required to pay some intermediate amount, all depending on the court's equitable assessments under § 113(f)." *Akzo Coatings, Inc. v. Aigner Corp.*, 909 F.Supp. at 1160–1161. Thus, any fear that Akzo and O'Brien may be held accountable for actual damages that they did not cause or for which they were in no way responsible is unfounded when determining liability; such concerns are more properly addressed to the actual allocation of contribution.

### B. Akzo & O'Brien's Motion

Akzo and O'Brien also seek partial summary judgment on the issue of liability. Akzo and O'Brien's motion is directed to some, but not all, of the Settling Defendants, including: American National Can Corp., Dexter Corp., Graham Paint & Varnish Co., Motorola, Inc., Prefinish Metals, Inc., Reynolds Metals Co., S & C Electric Co., Sherwin Williams Co., Valspar Corp., and Whittaker

**1360**

Corp.[2] Akzo and O'Brien also seek partial summary judgment against IVC Industrial Coatings, Inc. As with the motion filed by the Settling Defendants, Akzo and O'Brien seeks a finding that these defendants are liable for contribution under § 113(f) of CERCLA.

The Settling Defendants responded to the motion stating that they do not contest Akzo and O'Brien's motion, and IVC Industrial Coatings echoed this position when it filed a response that summarily adopted the Settling Defendants' response as its own. The responding defendants are careful to explain that their decision to not contest Akzo and O'Brien's motion is not intended to be a concession to all of the facts asserted by Akzo and O'Brien, but rather is merely intended as an acknowledgment that no genuine issues exist precluding Akzo and O'Brien from establishing each of the four essential elements necessary for a party to be deemed liable for contribution under § 113(f). Accordingly, the court grants Akzo and O'Brien's motion for partial summary judgment; the court finds that defendants American National Can Corp., Dexter Corp., Graham Paint & Varnish Co., Motorola, Inc., Prefinish Metals, Inc., Reynolds Metals Co., S & C Electric Co., Sherwin Williams Co., Valspar Corp., Whittaker Corp., and IVC Industrial Coatings, Inc. are liable for contribution under § 113(f) of CERCLA.

## II. CONCLUSION

Therefore, for the reasons articulated in this memorandum and order, the court:

(1) GRANTS the Settling Defendants' motion for partial summary judgment (filed October 30, 1995 (# 323)); Akzo and O'Brien are liable for contribution under § 113(f); and

(2) GRANTS Akzo and O'Brien's motion for partial summary judgment (filed November 28, 1995 (# 336)); American National Can Corp., Dexter Corp., Graham Paint & Varnish Co., Motorola, Inc., Prefinish Metals, Inc., Reynolds Metals Co., S & C Electric Co., Sherwin Williams Co., Valspar Corp., Whittaker Corp., and IVC

---

2. Akzo and O'Brien does not seek partial summary judgment as against Aigner Corp., Duplico-

Industrial Coatings, Inc. are liable for contribution under § 113(f) of CERCLA.

SO ORDERED.

lor Products Co., Illinois Bronze Paint Co., and Roll Coater, Inc.